Good morning, and may it please the Court. I'm Hillary Walsh, and I represent Mr. Ramos in this case. I'd like to reserve two minutes for rebuttal. Thank you. This petition challenges the Board's revocation of Mr. Ramos' deferral of removal, which was initially granted to him in 2005 and taken away in 2015 in the underlying removal proceedings. Now, the facts of this case are complicated, but the law mandating remand is very simple, and it is this. When the Board of Immigration Appeals decides deferral of removal cases under the Convention Against Torture, it must consider all the evidence. And we have two instances here where the Board failed to do so, and therefore, remand is mandatory. If the Court turns to page 4 of the record, it sees the Board of Immigration Appeals decision. This is page 2 of that decision. The last paragraph, it's three sentences, is the sum of the Convention Against Torture analysis. The second to last sentence discusses the evidence. Let me ask you to focus on that discussion of the Convention Against Torture claim. The BIA says we agree with the I.J.'s adverse credibility determination. Did the I.J. make an adverse credibility determination? No, Your Honor. He did not. So what do we do with that? Here, we need to give Mr. Ramos' testimony, because there's no adverse credibility determination to defer to. We have to give Mr. Ramos' testimony full weight before this Court. Well, here's my difficulty, so help me with it. If we were reviewing the I.J.'s decision here, there were no BIA, and we were just looking at the I.J.'s decision, would we deny the petition for review with respect to the Catt claim? If you were looking strictly at the I.J.'s decision? Strictly the I.J. The I.J. seems to have said, I'm not sure I believe everything he said, but I still don't think he's met his burden of showing the two elements, either that he will be tortured or that we'll be with government acquiescence. If we were looking solely at the I.J.'s decision, it would be a very different case, wouldn't it? It would, but it would still end in the same result, and that would be a remand. If we were before the I.J., and we didn't have the Board's decision kind of clouding what the actual issues are, we have an expert witness who testified, and the immigration judge accepted that as credible and as an opinion of an expert. And that expert gave testimony that said, and it's on page 172 of the record for the Court's convenience, that he predicts that Mr. Ramos faces an almost inevitable risk of egregious physical harm and a high probability of death if he is removed to El Salvador. But does that mean that we can only conclude that he will be tortured with government acquiescence if he goes to El Salvador? Acquiescence really isn't at issue in this case because of what the expert testified to. Well, I know we had evidence, but the other things in front of the I.J. There were country reports. There was your testimony of your client, et cetera. I mean, I guess what I'm asking is, couldn't the I.J. have come out differently on this evidence? You're saying there's only one conclusion possible from this evidence? Yes, Your Honor. There is only one conclusion. The expert's testimony was not contradicted by any of the existing evidence, nor was it contradicted by anything that the government put forth. The I.J. simply erred by choosing to disregard it. The Board repeated that decision and kind of doubled down on it by also not considering the evidence, the testimony from Ms. Ramos. That's one of the primary problems in the Board's decision is Ms. Ramos testified Mr. Ramos's younger sister. Right. She testified credibly to the immigration court about the past persecution, that her family had, rather, past torture that her family had endured, the past threats that had been unfulfilled, and her personal experience and prediction about what would happen to her brother if he were removed. Now, this is especially concerning, and this is especially problematic in mandates remand here, because the Board of Immigration Appeals didn't consider any of Mr. Ramos's testimony about this. And we know from Edu v. Holder, this Court's holding that past persecution is one of the primary factors that the Court relies on when determining convention against torture claims. So we have the Board of Immigration Appeals dismissing all of Mr. Ramos's testimony about this, and then failing to consider or even mention Ms. Ramos's testimony about it, in addition to the problem that arises with not giving an accurate characterization and statement about what the expert testified to. So can I ask you something that nobody briefed, and I wondered about looking at this case? Mr. Ramos gets deferral under CAT at some point in time. Yes. So somebody must have concluded at that point that he had, there was a likelihood that he would be tortured if returned with government acquiescence. He then commits a crime which makes him ineligible for certain relief, at least under the government's view. I know you attacked that. And then why does that change anything with respect to his fear of torture if returned? May I first speak to a slight misstatement of the kind of the procedural in terms of the facts? Sure. The threat, the terrorist threat crime was before, committed before. Okay. Right. But whenever it occurs, that crime doesn't change his fear of torture if returned. And so I'm trying to figure out why the previous determination doesn't have some sort of binding effect in this. Neither side argues that. And so is there a reason why? The reason why the immigration court and the government in the immigration court proceedings cited to the regulations implementing CAT. And when we're in deferral of removal, I read the regulations yesterday, and I agree that there's no binding effect on his ability to retain deferral of removal from this 2005 decision. You don't have to show that country conditions have changed for the better, for example? No. He just basically starts anew. He still bears the burden. So in that regard, the immigration court was correct. Stepping forward from there, the rest of the decision snowballs into a mass of errors that won't... I'm sorry. What's the legal consequence of the lack of an adverse credibility determination? At this point, the Court would need to give Mr. here, the precedent that this Court has set, says that when we're before the Ninth Circuit, we're to give Mr. Ramos's testimony full weight, a presumption of credibility, really. We assume credibility in the absence of a determination to the contrary. Yes, Judge Roberts.  Yes. That's the Court's precedent. So tell us what relief you seek. I think the best relief at this point is remand to the Board of Immigration Appeals for a couple of reasons. Not only because of the errors, I mean, just undeniable under Cole v. Holder, no denying that we have major problems here in terms of the CAT analysis. But then we also have problems under the Board's own precedent in terms of the particularly serious crime finding, being that the Board did not do any analysis that it's required to do under the first step of matter of NAM. So that's a problem that the Board needs to address. It also needs to address the CAT claim itself with respect to giving Mr. Ramos a presumption of credibility given the absence of an adverse credibility finding. And finally, given DeMaia and the Board's finding that Mr. Ramos has committed an aggravated felony that precludes him from asylum relief because it was what the Board found was a crime of violence without stating what part of the definition the crime of violence was. DeMaia says half that definition is unconstitutionally vague. So we have many issues that, although I wish that the court could rectify it here, remand is necessary. If I may reserve the rest of my time for rebuttal. You may. Thank you. Clear from the government. Good morning. Gene Hamilton on behalf of the Attorney General. Before I get started into the credibility issue in this case, I'd like to address what Petitioner just raised as to the issue of DeMaia and the immigration judges and the Board's analysis of whether or not the Petitioner's conviction constitutes a particular serious crime. Under this circuit's precedent, the statute for which he was convicted in 2003 for making threats with intent to terrorize constitutes an aggravated felony under 18 U.S.C. subsection 16A. So there is no confusion. DeMaia didn't change this. DeMaia focused on 16B. We have clear court precedent holding that it was an aggravated felony on those grounds under 16A. We also have the issue of the immigration judge and the Board. Although it's not a categorical felony, because we're talking here about a particularly serious crime analysis. That's correct. And so for the particularly serious crime analysis, we had in Latter Singh versus Holder, the Circuit Court of Appeals analyzed the elements of the offense of California Penal Code 422 and laid those out. Those elements were recognized by the immigration judge and cited in his decision. So I take it that, and your colleague can argue this for herself, but I take it from her briefing that her argument is not that the IJ didn't look at those elements, but when it got to the BIA, they didn't analyze the elements. They just quickly said, we think the IJ got it right or something like that. Does that create a problem? Judge, we would dispute that argument. In our analysis, it appears as though the Board considered the immigration judge's information. The Board cited the case that the immigration judge cited. Correct. But it didn't say, here are the elements of the offense the way the immigration judge did. So are they required to do that? It is our position that it is not required to do that. They noted with approval that this analysis, I mean, it was there. It is binding Ninth Circuit precedent. So the notion that there would have to be any further analysis of the elements of the offense is misplaced. But I'd like to turn to the ---- Would that conviction foreclose cat relief? It would foreclose if it was determined to be a particularly serious crime, which it was. It was foreclosed withholding under the conventioning at Storch. But not ---- Answer my question. Cat. Does it affect cat relief? It affects cat withholding, but not cat deferral. Cat deferral is still an option, and that has to be evaluated. And that's what he was ---- and he is seeking cat deferral. He was previously granted cat deferral, and he is now seeking cat deferral. Turning to the issue of credibility ---- So the answer to Judge Hawkins's question is, no, it doesn't preclude cat relief. That's correct, sir. Turning to the issue of credibility, it's interesting that the Petitioner now challenges the notion that there was an adverse credibility finding below. In fact, I'd like to point to this Court's attention, page 27 of the administrative record, which in the top of the page, in all capital, in bold letters, states, the immigration judge's finding that the respondent is not credible is erroneous. So are you arguing waiver of some kind? That's correct, sir. Where's that in your brief? This was not fully fleshed out in our brief. Or fleshed out at all, to be fair. True? Our brief, the contents of our brief are what they are, sir. That's correct. Okay. So let's assume ---- It's not in the brief. It's not in the brief, the fact that the Petitioner has now shifted her argument explicitly. Well, but the Petitioner files a petition for review and says, gee, the BIA erred. It thought the IJ made an adverse credibility determination, and the IJ did not. And you then file a response that doesn't say, oh, you waived that argument. So I think you've waived that argument. Your Honor, we would, we certainly address the issue, and we maintained in our briefing before this Court that the adverse credibility finding was explicit. Okay, that's a separate issue, and we ought to address that. But I'm just saying, I'm not sure, from my perspective at least, you can show up here for the first time with an argument that they've waived something that's in their petition for review that you didn't say in your response brief was waived, and ask her to ignore the argument. Address it on the merits. Do you think the IJ made an express adverse credibility determination? We do, Your Honor. We believe that the IJ did, and all parties, including the Petitioner, believed that there was an adverse credibility finding made by the immigration judge, and was fully briefed out before the Board of Immigration Appeals. There's multiple instances where the Petitioner had an opportunity to challenge the adverse credibility determination. Well, no, but just focus on what the IJ did for me for a second. Our case law seems to say, if you're going to make an adverse credibility determination, you've got to say so expressly. You just can't say, I kind of doubt what you're saying, or I don't find you very believable. You've got to say, I make an adverse credibility determination. And we've got all these cases that say anything but that's something that explicit isn't an adverse credibility determination. So what did the IJ do that? Your Honor, our position is that he did. In three instances, he made references to his adverse credibility assessment of the Petitioner. But under this court's precedent. But give us just one example. One example would be on, excuse me. It was early in the decision, he notes the Petitioner's credibility. And I'm sorry, I thought I had this on a note. I don't have it in front of me. There's three specific references where he noted. If we did a word search of everything the IJ wrote about this case, would it hit on the words adverse credibility determination? The specific words adverse credibility determination would not generate a hit. So let me give you the exact language that he used. The court observes initially there are concerns as to his credibility as a witness. Is that an adverse credibility determination under our precedent? Taken in the context of the statement, followed by the two subsequent references to the credibility issues that the immigration judge made, we would consider yes. Then he says later, these factors reflect poorly on the respondent's credibility. You think that's an adverse credibility determination under our precedent? Taken under the context of the statements in which he made. But let's, if our precedent says you have to say expressly, I'm making an adverse credibility determination, neither of those two do that. I've actually did a word search, and I've got the three times he used the word credibility. The next time he says, aside from his, aside from respondent's credibility, I want to get to the merits, and then he gets to the merits. So the only two times he uses the word credibility are in a sentence that says, there are concerns, and later it says, these factors reflect poorly. You think those two together are an adverse credibility determination? Taken in the context in which they were said, yes, your honor, we do believe that there was an adverse credibility determination made. There is no precedent in this court that stands for the proposition that there have to be magic words that are uttered. There's not a specific phrase that has to be stated. But can you point to a case that would suggest that these three things added together amount to an adverse credibility finding? Yes, your honor, I would be happy to supplement our brief with a 28J letter citing this court's decision in De Leon Barrios versus INS. It's a Ninth Circuit case from 1997, in which this issue was on point. It was raised, and in that case, the panel determined, based on the statements that were made and the context in which they were made, that there was an adverse credibility finding that had been rendered. There's been a lot of law since 1997, hasn't there? There has, your honor. Hasn't it sort of tightened this up a little bit? Our position is that it hasn't tightened it, that that's a distinct analysis of this particular issue. Clearly, there are contexts in which, for example, under this court's precedent, a pro se litigant might be treated as, and more favorably, in terms of the way that he briefs the issue of whether there's an adverse credibility determination or not made by the judge. But in the context of this particular case, with this particular petitioner, who was represented not only at the immigration court level, but at the Board of Immigration Appeals level, and now at the Circuit Court of Appeals level, that there was clearly an understanding that an adverse credibility determination had been made at each stage of the process until just now. Your time's winding down, but I have one question. I think you can answer yes or no, too. As I read the board's decision, it's based on this. Let's assume there was an adverse credibility determination. The board's decision is based on that determination, is it not? The board doesn't then separately go through and say, and even if he were credible, he hasn't proved his case. The board noted with approval and adopted the adverse credibility assessment, and then also noted the problems with the petitioner's, the coherency of his claim. Isn't the answer to Judge Hurwitz's question, no? We would argue yes. I'm not asking you to argue. I'm asking, isn't the answer to his question, no? I don't believe so, Your Honor. Okay. Thank you very much. Thank you. You've got some time left for rebuttal. In 2005, the Real ID Act completely changed adverse credibility law for the entire United States, so a 1997 decision, I don't know what it is, but the rules have changed, and they changed in 2005. I want to draw the court's attention to the fact that the government has yet to address the merits of the Catt claim. It did not do so in its brief, and it has not done so in its written form. And so here, and a big question mark remains, why? And it's because they have no argument under Cole versus Holder, why this court shouldn't remand. I also want to draw the court's attention to the fact that this would have been an easy thing for the government to agree to remand on. But instead, my client has been in detention for the past three years. He has children who he has not seen for that duration of time. This is extremely frustrating because the law is so clear on these points. With respect to the particularly serious crime finding, yesterday, Judge, you talked about how important it is that we stay within the context of the Board of Immigration Appeals decision when reviewing it, particularly on things like particularly serious crime findings. We can't bootstrap in the immigration judge's decision. And just to correct the record, the Board of Immigration Appeals didn't cite Latter Sing in its decision finding that the elements proved this was a particularly serious crime. Only the immigration judge did. Thank you. Roberts. We thank both counsel. I thank Ms. Walsh for taking this case pro bono. We appreciate it. It helps the Court. I thank both counsel for their excellent briefs and arguments. And this case will be submitted.
judges: Hawkins, Hurwitz, Eaton